IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | No. 23-03151-01-CR-S-SRB |
| DAVID MICHAEL KEMP, | ) ) ) | |
| Defendant. | ) ) | |

## **REPORT & RECOMMENDATIONS**

Before the Court is Defendant's Motion to Dismiss and Memorandum in Support of Motion to Dismiss. (Docs. 36, 37.) This action has been referred to the undersigned for the purpose of submitting a report on all pretrial motions to dismiss. As follows, it is **RECOMMENDED** that the Motion be **DENIED**.

### I.  Background

Defendant has been charged by indictment with one count of possession of a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8). (Doc. 1.)

In his Motion, Defendant asserts that the indictment should be dismissed because "18 U.S.C. § 922(g)(3) is a facially unconstitutional restriction on a person's Second Amendment right to bear arms." (Doc. 37 at 2.) In support, Defendant argues that "the government cannot prove that 18 U.S.C. § 922(g)(3) is a lawful restriction on gun ownership based on text, history, and tradition." *Id.* at 3. The Defendant also argues that "[i]n the alternative, it is unconstitutional as applied to Defendant Kemp, a marijuana user." *Id.* The Government filed Suggestions in Opposition to the Motion. (Doc. 40.)

## II. Applicable Law

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *New York State Rifle & Pistol Association, Inc. v. Bruen*, the Supreme Court held, as it did in preceding cases *District of Columbia v. Heller* and *McDonald v. City of Chicago, Ill.*, that the Second Amendment "protect[s] an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 597 U.S. 1, 10 (2022); *see also Heller*, 554 U.S. 570, 580–81 (2008) (holding that there is a "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans" not just an "organized militia"); *McDonald*, 561 U.S. 742, 789–91 (2010) (holding "that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*").

In light of the Court's opinions in *Heller* and *McDonald*, Courts of Appeals developed a two-step approach when analyzing Second Amendment challenges. First in this test, "the government may justify its regulation by establishing that the challenged law regulates activity falling outside the scope of the right as originally understood." *Bruen*, 587 U.S. at 18 (cleaned up). Second in this test, courts "analyze how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.* (cleaned up).

In *Bruen*, the Supreme Court directly rejected this two-step approach, stating that "[d]espite the popularity of this two-step approach, it is one step too many" as "the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny." *Id.* at 19–24 (cleaned up). Rather, the Court set forth an approach consistent with *Heller* that courts should be using when determining the constitutionality of a statute under the Second Amendment. First, a court must first ask whether "the Second Amendment's plain text

covers an individual's conduct." *Id.* at 17.  If so, "the Constitution presumptively protects that conduct," and as such the analysis continues to the second prong.  *Id.* at 24.  When the first prong is satisfied, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  *Id.*  "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command."  *Id.* (cleaned up).

### III. Discussion

Under 18 U.S.C. § 922(g)(3), it is unlawful for any person to possess a firearm if he or she "is an unlawful user of or addicted to any controlled substance."  18 U.S.C. § 922(g)(3).  Defendant argues that § 922(g)(3) violates the Second Amendment, facially and as applied, in light of *Bruen*, because the Government cannot demonstrate that prohibiting such conduct is consistent with the Nation's historical tradition of firearm regulation.  (Doc. 37 at 3.)  "An as-applied challenge asks the reviewing court to declare the disputed statute unconstitutional on the facts of the particular case."  *United States v. Lehman*, 8 F.4th 754, 757 (8th Cir. 2021) (cleaned up).  In contrast, "[a] facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications."  *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019).

The Government argues that Defendant cannot establish that § 922(g)(3) is unconstitutional, either on its face or as applied, because "(1) this regulation is consistent with America's historical tradition of firearm regulation, (2) controlling Eighth Circuit precedent holds that § 922(g)(3) is constitutional, and (3) section 922(g)(3) comports with the Second Amendment under the standard set out by *District of Columbia v. Heller* and *New York State Rifle & Pistol Association v. Bruen*."  (Doc. 40 at 1.)  The Court addresses the parties' arguments below.

### a. Defendant's As-Applied Challenge Must Be Held in Abeyance Until After a Trial

Defendant's as-applied challenge is premature and should not be ruled upon until after a trial, as his challenge would require resolution of factual issues squarely within the jury's purview. Under Federal Rule of Criminal Procedure 12(b)(1), a defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). The Eighth Circuit has held that "[g]ood cause exists and a decision should be deferred if disposing of the pretrial motion requires making factual determinations that fall within the province of the ultimate finder of fact." *United States v. Turner*, 842 F.3d 602, 605 (8th Cir. 2016).

Although the Defendant does not expand upon his argument that it is unconstitutional to apply § 922(g)(3) to him, his argument rests on the fact that he is not an unlawful user of controlled substances.[1] (Doc. 37 at 3). As such, the factual issues in dispute here, including the extent and timing of his marijuana use, must be decided by a jury at trial. *See Turner*, 842 F.3d at 605 ("In order to rule on Turner's as applied constitutional challenge, the district court therefore had to determine whether he had engaged in 'regular drug use' at the time he possessed the firearm."). Therefore, the undersigned finds that Defendant's as-applied Second Amendment challenge should be held in abeyance pending trial. The Court now turns to Defendant's facial challenge to § 922(g)(3).

---

[1] During a traffic stop in May 2023, with Defendant as the driver of the vehicle, the officer found a small amount of marijuana in the center console of the vehicle. Defendant "denied any knowledge of the marijuana in the vehicle, but acknowledged that he smoked a gram or two a day for the last year." (Docs. 37 at 1).

### b. Defendant's Facial Challenge Must be Rejected Based on Controlling Precedent

This Court is not at liberty to depart from Eighth Circuit precedent "until overruled by [the] court en banc, by the Supreme Court, or by Congress." *M.M. ex rel. L.R. v. Special Sch. Dist. No. 1*, 512 F.3d 455, 459 (8th Cir. 2008). Prior to *Bruen*, the Eighth Circuit already concluded that § 922(g)(3) is constitutional under the Second Amendment. *See United States v. Seay*, 620 F.3d 919, 925 (8th Cir. 2010). Post *Bruen*, the Eighth Circuit again rejected a facial Second Amendment challenge to § 922(g)(3), finding that "*Bruen* has supplemented the analysis [in *Seay*], but it has not changed the answer." *United States v. Veasley*, 98 F.4th 906, 910 (8th Cir. 2024); *see also United States v. Deng*, 104 F.4th 1052, 1054 (8th Cir. 2024) (reaffirming the decision in *Veasley*).

Defendant seems to be arguing that there are no historically similar regulations that the Government can point to in order to prove the constitutionality of § 922(g)(3) as required by *Bruen*. (Doc. 37 at 3.) However, the Supreme Court in *Bruen*, emphasized that "analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin." *Bruen*, 587 U.S. at 30. The Court further noted that "even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* The Court reemphasized this notion when analyzing § 922(g)(8) in the more recent case of *United States v. Rahimi*: "[S]ome courts have misunderstood the methodology of our recent Second Amendment cases. These precedents were not meant to suggest a law trapped in amber. . . . [T]he Second Amendment permits more than just those regulations identical to ones that could be found in 1791." 602 U.S. ___ (2024).

In *Veasley*, the Eighth Circuit conducted the historical analysis as required by the second prong in *Bruen*.[2] The court first attempted "to figure out whether § 922(g)(3) looks like anything that earlier generations did to keep firearms out of the hands of drug and alcohol users." *Veasley*, 98 F.4th at 911 (cleaned up). The Eighth Circuit concluded that there were no laws "disarming all drug users," recognizing, however, that "[m]odern synthetic drugs present a dramatic technological change." *Id.* at 912 (cleaned up) ("James Madison never experimented with methamphetamine, Benjamin Franklin did not dabble in PCP, and Thomas Jefferson did not use fentanyl to take the edge off the day. Today's drugs . . . are unprecedented." (cleaned up)). However, "[a]s *Bruen* itself recognizes, the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated." *Id.* (cleaned up). "When it comes to regulations implicating unprecedented societal concerns, *Bruen* is clear that [courts] cannot look at history through a pinhole." *Id.* (cleaned up). The *Veasley* court recognized that it "must take a more nuanced approach, again reasoning by analogy, to determine whether there is a well-established and representative historical analogue that could make § 922(g)(3) constitutional in some of its applications." *Id.* (cleaned up).

As such, the court turned to analyzing longstanding analogous laws related to the mentally ill, "presumptively risky people," and criminal misuse of firearms:

> The "burden" imposed by § 922(g)(3) is "comparable," if less heavy-handed, than Founding-era laws governing the mentally ill. *Bruen*, 597 U.S. at 29, 142 S.Ct. 2111. It goes without saying that confinement with straitjackets and chains carries with it a greater loss of liberty than a temporary loss of gun rights. And the mentally ill had less of a chance to regain their rights than drug users and addicts do today. See 1 Blackstone, Commentaries *294 (explaining that the law "always

---

[2] The court assumed that the first prong in the *Bruen* analysis was satisfied. *See Veasley*, 98 F.4th at 910. Specifically, that § 922(g)(3) governs conduct that falls within the plain text of the Second Amendment. *See id.* ("That is, drug users are part of 'the people' whom the Second Amendment protects, and handguns are weapons 'in common use' today." (cleaned up)).

imagines ... [their] accidental misfortunes may be removed"). Stopping the use of drugs, after all, restores gun rights under § 922(g)(3). See *Carnes*, 22 F.4th at 748.

The justification, which is to "keep guns out of the hands of presumptively risky people," is also comparable. *United States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2010) (per curiam). It is reflected in colonial-era laws, whether it be disarming loyalists, see *Jackson*, 85 F.4th at 471–72 (Stras, J., dissenting from denial of reh'g en banc), or making sure the mentally ill could not harm themselves or others. At least as applied to drug users and addicts who pose a danger to others, § 922(g)(3) is just another example of this "longstanding" tradition.[3] *Heller*, 554 U.S. at 626–27 n.26, 128 S.Ct. 2783.

. . . .

Just like its historical counterparts, § 922(g)(3) does not criminalize mere possession. It requires another act, the taking of drugs, which itself can cause terrifying and dangerous behavior. See Landry, *supra*, at 108. The decision to engage in illegal and dangerous conduct, in other words, is what leads to a temporary deprivation, which ends once the illegal behavior does. In that way, § 922(g)(3) imposes a "comparable burden" on the right to bear arms. *Bruen*, 597 U.S. at 29, 142 S.Ct. 2111.

*Veasley,* 98 F.4th at 915–17. The court ultimately concluded that these historical laws provided enough support to find § 922(g)(3) constitutional on its face. *Id.* at 918.

IV. Conclusion

For the foregoing reasons, as to Defendant's Motion to Dismiss, it is hereby **RECOMMENDED** that Defendant's facial challenge be **DENIED** outright and that Defendant's as-applied challenged be **DENIED** as premature.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: August 5, 2024

---

[3] The court did acknowledge that not all "drug users" will pose a danger, concluding that "those are details relevant to an as-applied challenge, not a facial one." *Id.*

7
Case 6:23-cr-03151-SRB    Document 42    Filed 08/05/24    Page 7 of 7